Frances JAHNER, as Executrix of the Estate of Mathias Jahner, deceased, and as surviving wife, and on behalf of Diane Jahner, Frank Jahner, Robert Jahner, Kathleen Jahner, Paul Jahner, and Mark Jahner, Plaintiff and Appellant,

v.

Kasper JACOB, Defendant and Appellee.

Civ. No. 930168.

Supreme Court of North Dakota.

April 20, 1994.

Albert A. Wolf (argued), Wheeler Wolf, Bismarck, for plaintiff and appellant.

Dwight C.H. Kautzmann (argued), Bair, Kautzmann & Bair, Mandan, for defendant and appellee.

MESCHKE, Justice.

Frances Jahner appealed from a summary judgment dismissing her action against Kasper Jacob to recover $9,500 fraudulently transferred to Kasper by his father, Valentine Jacob. We affirm.

After a long hiatus, we face the fourth chapter in the legal aftermath of a 1973 fracas between Valentine Jacob and Mathias Jahner. *See State v. Jacob,* 222 N.W.2d 586 (N.D.1974); *Jahner v. Jacob,* 233 N.W.2d 791 (N.D.), *cert. denied,* 423 U.S. 870, 96 S.Ct. 134, 46 L.Ed.2d 100 (1975) ["*Jahner I*"]; *Jahner v. Jacob,* 252 N.W.2d 1 (N.D.1977) ["*Jahner II*"]. Mathias sued Valentine for injuries in the fight. Frances, as executrix of Mathias's estate, was substituted as plaintiff after Mathias died of causes unrelated to the fight. In *Jahner I,* we affirmed the judgment that Frances obtained against Valentine for more than $50,000.

A few weeks after the 1973 fracas, Valentine transferred most of his property to his children. Kasper, who was living in Georgia at the time, received a bank draft for $9,500. Frances sued to set aside these transfers under NDCC Ch. 13–02, the Uniform Fraudulent Conveyance Act. On appeal, we upheld the judgment setting aside fraudulent transfers to Valentine's children in North Dakota. *Jahner II,* 252 N.W.2d at 6–8. However, we reversed that part of the judgment setting aside transfers to Kasper and another out-of-state child because the court did not have personal jurisdiction.

Kasper lived outside of North Dakota, except for a few brief periods, until moving back to the state in 1989. Frances again sued Kasper in December 1989 to set aside his $9,500 transfer. Kasper moved for summary judgment. The trial court concluded that, because the 1974 judgment against Valentine had expired in 1984 and had not been renewed, there was no valid underlying debt to support Frances's action to set aside the fraudulent transfer. The trial court ordered summary judgment dismissing Frances's claim.

Frances attempted to appeal from the order for judgment, before a judgment had been entered dismissing her claim. We remanded for entry of judgment, and we now treat the attempted appeal from the order for judgment as an appeal from the subsequently entered consistent judgment. *See Sullivan v. Quist,* 506 N.W.2d 394, 396 n. 1 (N.D.1993). We have appellate jurisdiction to review the summary judgment.

Frances focuses her argument primarily upon statute of limitations problems, especially whether the tolling doctrine, expressed in NDCC 28–01–32, suspended the six-year limitations period for a fraudulent-transfer action, set by NDCC 28–01–16, during Kasper's long absence from the state. We deem it unnecessary to reach that question because we agree with the trial court; the lack of a presently enforceable debt against Valentine is fatal to Frances's action against Kasper to set aside a fraudulent transfer.

The $9,500 transfer from Valentine to Kasper occurred in 1973, and is governed by the law, NDCC Ch. 13–02, in effect at that time. The Uniform Fraudulent Conveyance Act, NDCC Ch. 13–02, was repealed in 1985 and replaced by the Uniform Fraudulent Transfer Act. 1985 N.D.Sess.Laws Ch. 186. *See* NDCC Ch. 13–02.1. In construing a statute derived from a uniform act, we seek "to effectuate its general purpose to make uniform the law of those states which enact it." NDCC 1–02–13; *In re Conservatorship of Milbrath,* 508 N.W.2d 360, 362–363 (N.D. 1993). We thus give special deference to decisions of other jurisdictions interpreting the uniform act.

The remedies available to a defrauded creditor were set out in NDCC 13–02–09:

*Rights of creditors whose claims have matured.*—Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one

who has derived title immediately or mediately from such purchaser, may:

1. Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim; or

2. Disregard the conveyance and attach or levy execution upon the property conveyed.

A purchaser who without actual fraudulent intent has given less than a fair consideration for the conveyance or obligation may retain the property or obligation as security for repayment.

"Creditor" was defined in NDCC 13–02–01(3):

> *Definition of terms.*—In this chapter, unless the context or subject matter otherwise requires:
>
> \* \* \* \* \* \*
>
> 3. "Creditor" is a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent; . . .

■ A valid, presently enforceable debt against the original transferor is an essential element of an action against the transferee to set aside a fraudulent transfer. *See Laidley v. Heigho*, 326 F.2d 592, 593–594 (9th Cir. 1963); *Strom v. Felton*, 76 Wyo. 370, 302 P.2d 917, 923 (1956); *State of Rio De Janeiro v. E.H. Rollins & Sons, Inc.*, 299 N.Y. 363, 87 N.E.2d 299, 300 (1949); *Remington–Rand, Inc. v. Emory University*, 185 Ga. 571, 196 S.E. 58, 59 (1938). *See also Eskridge v. Nalls*, 852 P.2d 818, 821 (Okla.Ct.App.1993); *Jorden v. Ball*, 357 Mass. 468, 258 N.E.2d 736, 737 (1970); *Blumenthal v. Blumenthal*, 303 Mass. 275, 21 N.E.2d 244, 246 (1939); *Marcus v. Kane*, 18 F.2d 722, 723 (2d Cir. 1927). This rule has a long history. *See* Bump, Fraudulent Conveyances 500 (1896); 1 Moore, Fraudulent Conveyances 196–197 (1908); 37 C.J.S. Fraudulent Conveyances § 70 (1943). The rationale for the rule is explained in *Jorden v. Ball*, 258 N.E.2d at 737:

> The uniform fraudulent conveyance act confers jurisdiction to set aside conveyances made with actual intent "to hinder, delay, or defraud either present or future creditors, \* \* \*" G.L. c. 109A, § 7. The

act is remedial. It provides a method by which the frustration of claims by a conveyance may be avoided, but it does not create new claims. To benefit from the rights it creates, a person must qualify as a "creditor," defined in the act as "a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." As we stated in *Blumenthal v. Blumenthal*, 303 Mass. 275, 278, 21 N.E.2d 244, 246, "The remedy is incidental to the claim. If the claim is not established, then the whole proceedings fail, and the bill must be dismissed."

Even if the claimant was a "creditor" when the fraudulent transfer occurred, the claimant loses her status as a creditor if her claim against the transferor becomes barred by the statute of limitations, a non-claim statute, or other method. *See Laidley v. Heigho*, 326 F.2d at 594; *Remington–Rand, Inc. v. Emory University*, 196 S.E. at 59; *State of Rio De Janeiro v. E.H. Rollins & Sons, Inc.*, 87 N.E.2d at 300; *Kirschner v. Cohn*, 185 Misc. 526, 56 N.Y.S.2d 887, 888 (Sup.Ct.1945). Without a debt enforceable against the transferor, a creditor has no claim against the transferee.

■ The effect of setting aside a fraudulent transfer of property is to revest title in the debtor. *Laidley v. Heigho*, 326 F.2d at 593–594; *Rice v. Schubert*, 101 Cal.App.2d 638, 226 P.2d 50, 52 (1951) ("The effect of a judgment would be to revest the title to the property involved in the debtor."). As explained in *Laidley*, 326 F.2d at 594, "surely the [Uniform Act] does not contemplate the absurdity of granting such relief where, as here, judgment cannot be obtained against the only party in whom the transferred property could be revested." *See also Remington–Rand, Inc. v. Emory University*, 196 S.E. at 59 ("[W]here the debt is barred, equity will not proceed to make the vain and empty gesture of setting conveyances aside, or of attempting to subject the property to such barred debt."). Accordingly, numerous decisions declare that the action to set aside a fraudulent conveyance is merely "incidental," "adjective," and "ancillary" to the creditor's right to collect the underlying debt. *Blumenthal v. Blumenthal*, 21 N.E.2d at

246–247; *State of Rio De Janeiro v. E.H. Rollins & Sons, Inc.*, 87 N.E.2d at 300. *See also Central–Penn Nat'l Bank of Philadelphia v. Culp*, 320 Pa. 358, 182 A. 239, 240–241 (1936). Because the fraudulent-transfer claim is ancillary and incident to the underlying debt, the creditor has no greater rights against the transferee than he has against the transferor.

 This rationale forms the basis for the decision in *Congress Candy Co. v. Farmer*, 73 N.D. 174, 12 N.W.2d 796 (1944). The court held that a creditor could not set aside an alleged fraudulent transfer of property that the debtor could have claimed as exempt. The *Congress Candy* holding, 12 N.W.2d at 803, recognizes that a creditor may challenge a transfer for fraud only if the property would be subject to levy and execution if revested in the transferor.

▉ We agree with the trial court that Frances's failure to renew the judgment against Valentine is fatal to her action to set aside the fraudulent transfer. Our statutes have a simplified method for renewing a judgment. An original judgment is renewed for an additional ten years by filing an affidavit of renewal within 90 days of expiration of the original judgment. *See* NDCC 28–20–21, 28–20–22, 28–20–23. If the judgment creditor does not file an affidavit of renewal within the original ten-year period, NDCC 28–20–35 declares that the judgment is canceled of record and is unenforceable:

> *Cancellation of judgment of record.* After ten years after the entry of a judgment that has not been renewed, or after twenty years after the entry of a judgment that has been renewed, the judgment must be canceled of record.

Accordingly, when Frances failed to file an affidavit of renewal for the 1974 judgment against Valentine before it expired in 1984, the judgment became unenforceable against Valentine, the judgment debtor.

Frances relies on *Union Nat'l Bank of Grand Forks v. Ryan*, 23 N.D. 482, 137 N.W. 449 (1912), but that decision is inapposite. In *Ryan*, the judgment debtor was absent from the state after judgment was entered. This court held that, even though the original judgment had apparently expired without being renewed, the judgment debtor's absence from the state tolled the ten-year statute of limitations for bringing a separate action upon the judgment. *See* NDCC 28–01–15(1). There is no allegation that Valentine, the judgment debtor in this case, was absent from the state to toll the statute of limitations, nor is this a separate action upon the original judgment.

Because there no longer is a legally enforceable judgment debt against Valentine, no claim can be made against Kasper to set aside the transfer as fraudulent. Any such action could, at best, revest title to the $9,500 in Valentine. *See Laidley v. Heigho*, 326 F.2d at 593–594; *Rice v. Schubert*, 226 P.2d at 52. Frances can no longer levy or execute upon Valentine's property. The law does not require performance of the idle act of revesting title in the judgment debtor when the creditor could still not reach the property. *Laidley v. Heigho*, 326 F.2d at 594; *Remington–Rand, Inc. v. Emory University*, 196 S.E. at 59; NDCC 31–11–05(23) ("The law neither does nor requires idle acts.").

We conclude that a valid, legally enforceable debt is an essential element of an action to set aside a fraudulent transfer. Because the judgment against Valentine is no longer enforceable, Frances cannot set aside the transfer to Kasper. The judgment dismissing Frances's claim is affirmed.

VANDE WALLE, C.J., and LEVINE, NEUMANN and SANDSTROM, JJ., concur.