**Opinion issued November 24, 2020**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-19-00397-CV

_____

**JAY H. COHEN, INDIVIDUALLY AND AS TRUSTEE OF THE JHC TRUSTS I AND II, Appellant**

**V.**

**NEWBISS PROPERTY, L.P AND SANDCASTLE HOMES, INC., Appellees**

---

**On Appeal from the 234th District Court**
**Harris County, Texas**
**Trial Court Case No. 2010-20973-A**

---

## MEMORANDUM OPINION

This is a suit by the limited partner of a partnership against the transferees of two tracts of properties owned by the partnership for aiding and abetting the general partner's breach of fiduciary duties, conspiracy, fraudulent transfer by the general partner, and recission based on ultra vires acts of the general partner.

Appellant, Jay Cohen, individually and as trustee of the JHC Trusts I & II (collectively, "Cohen") challenges the trial court's no-evidence and traditional summary judgments in favor of appellees, NewBiss Property, LP. And Sandcastle Homes, Inc. (collectively, "the purchasers"). We affirm.

## BACKGROUND

This case has a long history and has been in this Court on two previous occasions, as well as in the Texas Supreme Court. The background facts, as taken from the Texas Supreme Court opinion are as follows:

> Jay Cohen was trustee of JHC Trusts I & II (the Cohen Trusts). In this capacity, he transferred several properties belonging to the trust into different partnerships. One instance involved "the West Newcastle property," which Cohen transferred to Flat Stone II, Ltd., a limited partnership. In June 2006, Matthew Dilick, the controlling shareholder of Flat Stone II of Texas, Inc., Flat Stone II's general partner, gave Regions Bank a first-lien deed of trust on the West Newcastle Property as collateral for a personal loan. Dilick defaulted and entered into a foreclosure-forbearance agreement with the bank in April 2009. Two weeks later, Dilick created a limited partnership called West Newcastle, Ltd. He then conveyed a tract from the West Newcastle property (Tract I) to this new limited partnership. Cohen sued, alleging Dilick fraudulently transferred the property and acted outside his authority in all the transfers and subsequent transactions. Cohen filed notices of lis pendens on the various pieces of property involved in the suit.

> One of the notices of lis pendens dealt specifically with the West Newcastle property and stated that the purpose of the underlying suit was to invalidate the transfer of property to West Newcastle Ltd. and to set aside and cancel any liens Flat Stone II granted, through Dilick, to Regions Bank. The trial court granted the defendants' emergency motions to expunge the notices of lis pendens. Cohen sought mandamus relief in the court of appeals and obtained a stay of the trial

2

court's expungement order. But while the matter was pending at the court of appeals, Dilick conveyed Tract I to Sandcastle for $750,000.

The court of appeals conditionally granted Cohen mandamus relief, holding the trial court erred when it found Cohen's pleading did not articulate a real-property claim on its face. Back at the trial court, Cohen added Sandcastle as a defendant and sought to set aside its recent purchase of Tract I. After another hearing on the applications to expunge the lis pendens notice, the trial court again ordered the lis pendens expunged—finding that Cohen "failed to establish by a preponderance of the evidence the probable validity of a real property claim." Meanwhile, between the hearing and the trial court's entering of the expungement order, Dilick transferred the remainder of the West Newcastle property (Tract II) back to Flat Stone II. Cohen filed another mandamus petition and a motion to stay in the court of appeals, but the court denied his requests. Dilick subsequently sold Tract II to NewBiss for $1.8 million. Cohen added NewBiss as a defendant to the lawsuit, seeking to set aside this latest purchase.

Sandcastle and NewBiss claimed bona-fide-purchaser status, and each filed summary-judgment motions. Both claimed they lawfully relied on the trial court's expungement order, which voided any notice derived from the lis pendens. The trial court granted both motions and rendered separate final judgments.

*Sommers for Alabama & Dunlavy, Ltd. v. Sandcastle Homes, Inc.*, 521 S.W.3d 749, 751–52 (Tex. 2017) (footnotes omitted).

### The previous appellate proceedings

#### The Mandamus

As referenced in the quote above, the first proceeding in this Court was a mandamus brought by Cohen before seeking to stay the trial court's expungement of the lis pendens he had filed soon after suing Dilick. This Court conditionally granted Cohen's requested relief, holding that the trial court erred in expunging the

lis pendens because Cohen's pleading articulated a real property claim. *See In re Cohen*, 340 S.W.3d 889, 900 (Tex. App.—Houston [1st Dist.] 2011, orig. proceeding); *see also* TEX. PROP. CODE § 12.0071(c)(1) (authorizing expunction of a notice of lis pendens when the pleading in underlying suit does not contain cognizable real-property claim).

*The First Appeal in this Court*

Cohen added both Sandcastle and NewBiss to his suit against Dilick, seeking to set aside the sales of Tracts I and II. The purchasers each filed summary-judgment motions, asserting bona-fide-purchaser defenses[1] because the lis pendens filed by Cohen had been expunged. After the trial court granted the purchasers' motions for summary judgment, Cohen appealed to this Court. We held that the purchasers were, in fact, bona fide purchasers, because expunction of the lis pendens extinguished actual and constructive notice of the underlying claims. *Cohen v. Sandcastle*, 469 S.W.3d 173, 185–86 (Tex. App.—Houston [1st Dist.] 2015, *rev'd*, *Sommers v. Sandcastle Homes, Inc.*, 521 S.W.3d 749 (Tex. 2017).

---

[1] Status as a bona fide purchaser is an affirmative defense to a title dispute. *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001). To utilize this defense, one must acquire property in good faith, for value, and without notice of any third-party claim or interest. *Id.*

*Texas Supreme Court proceedings*

On petition for discretionary review, the Texas Supreme Court reversed this Court's judgment, holding that an expunged lis pendens did not "eradicate notice arising independently of the recorded instrument expunged." *Sommers*, 521 S.W.3d at 756. Because of "an unresolved fact issue" regarding whether the purchasers "had actual, independent knowledge of the issues covered by the lis pendens notice," the court remanded the case to the trial court "for further proceedings consistent" with its opinion. *Id.* at 757.

### Proceedings on Remand in the Trial Court

On remand to the trial court, Cohen filed his Fourteenth Amended Petition, in which he asserted the following claims against the purchasers: (1) aiding and abetting Dilick in his breach of fiduciary duties, (2) conspiring with Dilick to breach his fiduciary duties, (3) receiving property by fraudulently transferred by Dilick in violation of the Texas Uniform Fraudulent Transfer Act ["TUFTA"],[2] and (4) seeking recission of the sales based on the ultra vires actions of Dilick.

The purchasers filed a No-Evidence Motion for Summary Judgment, asserting that Cohen had failed to produce any evidence on the elements of their aiding-and-abetting, conspiracy, or TUFTA claims.

---

[2] *See* TEX. BUS. & COM. CODE §§ 24.001-.013.

The purchasers also filed a Traditional Motion for Summary Judgment, supported by summary judgment evidence, contending that:

(1)     Cohen lacked standing to bring "certain claims" as a matter of law,

(2)     Cohen failed to join multiple necessary parties,

(3)     Cohen's tort claims were barred as a matter of law for multiple reasons including:

     (a) law of the case,
     (b) the absence of a cause of action for aiding and abetting,
     (c) failure to raise a fact issue on conspiracy,

(4)     the partnership agreement disclaimed the existence of fiduciary duties by the general partner, Dilick,

(5)     there is no private cause of action for ultra vires actions relating to limited partnerships, and

(6)     the TUFTA claim necessarily fails because of the lack of an underlying "claim."

After Cohen responded to and presented evidence in opposition to the motions, the trial court granted both the no-evidence and traditional motions for summary judgment.

This, Cohen's second appeal to this Court, follows.

## PROPRIETY OF SUMMARY JUDGMENTS

In a single issue with multiple sub-issues, Cohen contends that the trial court erred in granting the purchasers' no-evidence motions for summary judgment and traditional motions for summary judgment.

### *Standard of Review*

We review grants of summary judgment de novo. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). In our review, we take as true all evidence favorable to the non-movant, indulge every reasonable inference in favor of the non-movant, and resolve any doubts in the non-movant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

When, as here, a party moves for both traditional and no-evidence summary judgments, we first consider the no-evidence motion. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the non-movant fails to meet its burden under the no-evidence motion, there is no need to address the challenge to the traditional motion as it necessarily fails. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). Thus, we first review each claim under the no-evidence standard. Any claims that survive the no-evidence review will then be reviewed under the traditional standard.

To defeat a no-evidence motion, the non-movant must produce evidence raising a genuine issue of material fact as to the challenged elements. *See Ridgway*,

135 S.W.3d at 600. A genuine issue of material fact exists if the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (quoting *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995)). The evidence does not create an issue of material fact if it is "so weak as to do no more than create a mere surmise or suspicion" that the fact exists. *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014) (quoting *Ridgway*, 135 S.W.3d at 601).

A party moving for traditional summary judgment meets its burden by proving that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c).

### Aiding and Abetting Breach of Fiduciary Duty

In his first sub-issue, Cohen contends that the trial court erred in granting the purchasers' no-evidence motions for summary judgment on his claim that the purchasers aided and abetted Dilick's breach of fiduciary duty.[3] Specifically, he contends that his response to the motions raised a genuine issue of fact on each element of the cause of action.

---

[3] We note that the Texas Supreme Court has not expressly decided whether Texas recognizes a cause of action for aiding and abetting. *See First United Pentecostal Church v. Parker*, 514 S.W.3d 214, 224 (Tex. 2017); *see also Juhl v. Airington*, 936 S.W.2d 640, 643 (Tex. 1996). However, for purposes of this opinion, we will assume, without deciding, that it does.

*Applicable Law*

To prevail on his claim that the purchasers aided and abetted Dilick's breach of fiduciary duty, Cohen must show that (1) Dilick committed a breach of fiduciary duty to Cohen, (2) the purchasers knew that Dilick's conduct constituted a breach of his fiduciary duties, (3) the purchasers intended to assist Dilick in breaching his fiduciary duty, (4) the purchasers gave Dilick assistance or encouragement in his breach, and (5) the purchasers' assistance or encouragement was a substantial factor in causing the tort. *See Juhl v. Airington*, 936 S.W.2d 640, 643–44 (Tex. 1997).

*The parties' contentions and authorities*

The purchasers do not contend on appeal from the no-evidence summary judgments that Dilick did not breach any fiduciary duty to Cohen. Thus, the first element above is not relevant to this discussion. We will assume without deciding that Dilick committed a breach of fiduciary duty to Cohen.[4]  We also agree with

---

[4]  In his brief, Cohen alleges that "in a clear breach of his fiduciary duties, Dilick sold the Bissonnet Property to Sandcastle and NewBiss to pay off a personal loan and that Flat Stone II received nothing from the sale." This is consistent with his live pleading before the summary judgments were granted, in which Cohen alleged that Dilick breached his fiduciary duties by:

> self-dealing; misusing funds borrowed using the Limited Partnership properties as collateral (including the misuse of such funds for the personal benefit of Dilick and various Dilick companies); failing to account for and/or misrepresenting the use of such loan funds; using funds from Flat Stone and properties of Flat Stone II (the Bissonnet Properties) to collateralize loans that were not for the benefit of Flat

9

the purchasers that Dilick's breach of fiduciary duty relates not merely to the fact that he caused the properties to be sold, but to "Dilick's decision to direct the disbursement of the sale proceeds from the sale of the Sandcastle and NewBiss properties to discharge a personal loan rather than for the benefit of Flat Stone II."

Thus, we must decide whether Cohen presented evidence raising a genuine issue of material fact regarding whether the purchasers intended to assist Dilick in diverting the proceeds from the sales for his personal use, assisted and encouraged Dilick in doing so, and that their assistance or encouragement was a substantial factor in Dilick's breach of his fiduciary duty.

*Cohen's contentions*

Cohen contends that, because the purchasers knew about the pending litigation between himself and Dilick at the time they purchased their properties, he has raised a genuine issue of material fact regarding whether they, the purchasers, intended to assist Dilick in his breach of fiduciary duty, assisted and encouraged him to do so, and whether their assistance or encouragement was a substantial factor in Dilick's breach. Specifically, Cohen contends that "Sandcastle was well

Stone or Flat Stone II, but were for the benefit of Dilick and Dilick-related entities in unauthorized and ultravires transactions with Partnership properties; transferring title to the Bissonnet Properties to entities owned and controlled by Dilick in exchange for no consideration to Flat Stone II, transferring title to the Bissonnet Properties (or contracting to do so) to Sandcastle . . . and NewBiss in exchange for payment of Dilick's personal debt to SE Texas.

10

aware that further sale of the property that belonged to Flat Stone II would be a further violation of Dilick's statutory and common law fiduciary duties," and that "[k]nowledge of the transactions and allegations of breach of fiduciary duty in the Original Lawsuit supports the inference that Sandcastle and NewBiss knowingly participated in Dilick's breach of his fiduciary duties to Cohen and Flat Stone II by selling the property to them." Cohen further asserts that "Sandcastle and NewBiss purchased the Bissonnet Property from Dilick, thus providing substantial assistance to him in breaching his duties to Flat Stone II and its other limited partners."

Essentially, Cohen is arguing that, if Sandcastle and NewBiss were not bona fide purchasers of the property because they knew about the allegations in the original lawsuit between Cohen and Dilick, then they must be joint tortfeasors with Dilick because, by purchasing the properties, they aided and abetted the torts alleged to have been committed by Dilick in the original lawsuit.

In support of his position, Cohen relies on *Graham Mortgage Corp. v. Hall*, 307 S.W.3d 472 (Tex. App.—Dallas 2010, no pet.). In *Graham*, a mortgage lender loaned money to a limited partnership knowing that the purpose of the partnership was to "acquire, own, operate, manage, and develop" a certain parcel of real property. *Id.* at 475. Sometime thereafter, one of the partners, Hall, sued another partner, Douglas, alleging that Douglas had breached a fiduciary duty by using the

11

real property to secure debts of other Douglas entities. *Id.* at 479. Hall also sued Graham, alleging that he aided and abetted Douglas's breach because part of the proceeds from the loans that were obtained in breach of Douglas's fiduciary duty were used to make payments on other loans between Graham and Douglas *Id.* at 480. The court concluded that because Graham, as mortgage lender, had knowledge of the initial purpose of the partnership, had participated in prior loans with the partnership, and had required that the partnership's property be cross-collateralized with a loan that was not associated with the partnership property, there was evidence that Graham knowingly participated in Douglas's breach of fiduciary duty. *Id.*

Other than some similarity in the breach of fiduciary duty alleged, i.e., a partner using partnership property to secure private debt, we do not find *Graham* to be persuasive or applicable authority. Graham, as mortgage lender for the purchase of the property at issue in that case, was extensively involved in partnership business, both before and after Douglas breached his fiduciary duty by using the partnership property to secure non-partnership debts and Graham had knowledge of the terms of all the prior agreements between the parties. Here, the purchasers were not parties to any of the prior transactions involving Flat Stone II or Dilick. At best, Sandcastle and NewBiss were arms-length purchasers of the properties, who had knowledge of the lawsuit between Cohen and Dilick, but who had nothing

12

to do with the events giving rise to the lawsuit. As such, the purchasers' conduct in purchasing the properties cannot be equated with that of the mortgage banker who facilitated and benefitted from the loans in *Graham*.

*The purchasers' contentions*

In contrast, the purchasers argue that "[e]ven if Sandcastle and NewBiss knew about the allegations in the lawsuit, Cohen presented no evidence that Sandcastle and NewBiss knew that Dilick's consummation of the sales in his capacity as President of the general partner of Flat Stone II could constitute a breach of fiduciary duty to Cohen" and that "Cohen presented no evidence that Sandcastle or NewBiss knew what Dilick's intentions were with the sales proceeds." In sum, the purchasers' position is that their purchases of the property alone, even if done with knowledge of the pending lawsuit between Cohen and Dilick, is not evidence that they aided and abetted Dilick in any breach of fiduciary duty.

In support of their contentions, the purchasers rely on *KCM Financial, LLC v. Bradshaw*, 457 S.W.3d 70 (Tex. 2015). In *Bradshaw*, the holder of a non-participating royalty interest sued the executive-right interest holder for breach of fiduciary duty, alleging that the executive-right interest holder executed a mineral lease on terms that included a sub-market royalty rate. *Id.* at 74. The non-participating royalty interest owner also sued the lessee, alleging that the lessee

"acted in concert with the executive in facilitating the breach and that the executive's ill-gotten gains were fraudulently transferred to third parties." *Id.* The court concluded that Bradshaw's derivative claims against the lessee did not present "any evidence raising a fact issue that [the lessee] was complicit in the underlying tort." *Id.* at 85. In so holding, the court noted that "[e]vidence that [the lessee] knew that the estate was burdened with Bradshaw's non-participating royalty interest, may have known about the tensions between [the non-participating royalty interest holder and the executive-interest holder], and agreed to a one-eight royalty and eight-figure bonus payment to [the executive-interest holder] are simply insufficient to impute [the executive-interest holder's] liability to [the lessee]." *Id.* at 85–86. The court further discussed its reluctance to hold the lessee derivatively liable for the lessor's [executive-interest holder's] torts.

> The evidence shows nothing more than a typical business transaction in which the parties reached a meeting of the minds as to terms mutually acceptable to both sides. Were we to validate [the non-executive holder's] theory of liability on such unremarkable evidence, it would be difficult to conceive of a context in which a lessee would not owe a derivative fiduciary duty to the other side of the bargaining table. An arms-length negotiation would be essentially nonexistent, because both sides of the table would be required to balance their interests again the non-executive's interest. This is not only contrary to the limited scope of the duty we have recognized in this context, it is nonsensical.

> . . . .

> [I]n negotiating with the executive, a lessee should not fear liability for doing nothing more than getting a good deal closed.

14

*Id.* at 86.

As in *Bradshaw*, the record shows that the purchasers, even if they had knowledge of the dispute between Cohen and Dilick, were part of an arms-length transaction[5] in purchasing the properties.

*Analysis*

We believe that this case is more like *Bradshaw* than *Graham*. In *Graham*, the party held responsible for aiding and abetting, the mortgage broker, was extensively involved in the parties' prior dealings, was aware of the terms and limitations of their previous agreements, and part of the funds that the defendant obtained by using the partnership property to improperly secure a loan went toward paying the mortgage broker on unrelated loans to the defendant. *See Graham*, 307 S.W.3d at 479. In contrast, the lessee in *Bradshaw* was unrelated to and uninvolved with either the non-participating royalty interest owner or the executive-right holder; he merely negotiated for and obtained a royalty lease on the property as a part of an arms-length transaction. *Id.* at 85–86.

In this case, it is undisputed that the purchasers were not involved in anything Dilick and or his related companies may have done before the sales.

---

[5] The Texas Supreme Court has defined an "arms-length transaction" as a transaction between two unrelated and unaffiliated parties. *Bradshaw*, 457 S.W.3d 85 n.11. Cohen's live pleading does not allege that either Sandcastle or NewBiss are related to either Cohen or Dilick or their affiliated entities.

Cohen's only allegation is that the purchasers were aware of his dispute (and lawsuit) with Dilick before they purchased their properties. Cohen brought forth no evidence that either Sandcastle or NewBiss were aware of what Dilick intended to do with the proceeds from the sales.

While the purchasers' knowledge of the underlying lawsuit between Cohen and Dilick might deprive them of a bona fide purchaser defense in a title dispute, such knowledge, without more, is *no evidence* that they intended to assist Dilick in committing a tort by diverting the proceeds from the sales for his personal use, assisted and encouraged Dilick in doing so, or that their actions were a substantial factor in Dilick's breach of his fiduciary duty.

Because Cohen failed to come forth with evidence raising a genuine issue of material fact as to these three elements of his claim that the purchasers aided and abetted Dilick's breach of fiduciary duty, the trial court properly granted the purchasers' no-evidence summary judgment on this claim. Because Cohen failed to overcome his no-evidence burden on his aiding-and-abetting claim, we need not address the traditional motion to the extent it addresses the same claim. *Lightning Oil Co. v. Anadarko E & P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017).

### *Civil Conspiracy*

In his second sub-issue, Cohen contends that the trial court erred in granting the purchasers' no-evidence motions for summary judgment on his claim of a civil

conspiracy to commit a breach of fiduciary duty. Specifically, he contends that his response to the motions raised a genuine issue of fact on each element of the cause of action.

*Applicable Law*

To prevail on his claim of a civil conspiracy to commit a breach of fiduciary duty, Cohen must show  1) a combination between two or more persons; here, Dilick and/or his entities and Sandcastle and NewBiss, respectively; (2) the persons seek to accomplish an object or course of action; (3) the persons reach a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts are taken in pursuance of the object or course of action; and (5) damages occur as a proximate result. *See First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017); *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005). An actionable civil conspiracy requires specific intent to agree to accomplish something unlawful or to accomplish something lawful by unlawful means. *Parker*, 514 S.W.3d at 222. This inherently requires a meeting of the minds on the object or course of action. *Id.* (citing *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983)). Thus, an actionable civil conspiracy exists only as to those parties who are aware of the intended harm or proposed wrongful conduct at the outset of the combination or agreement. *Id.*; *see Firestone Steel Prods. Co. v.*

17

*Barajas*, 927 S.W.2d 608, 614 (Tex. 1996); *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 857 (Tex. 1968).

*The parties' contentions*

Cohen contends that the "overt act" in the alleged conspiracy is Dilick's breach of fiduciary duty, which, as alleged in Cohen's brief was "the sale itself to Sandcastle and NewBiss, without Cohen's knowledge, to pay off Dilick's personal loan held by SE Texas." Cohen further contends, as he did in his aiding-and-abetting claim, that because, "'knowing all about the lawsuit' Sandcastle and NewBiss chose to go ahead with the purchase of the property," they necessarily conspired to breach Dilick's fiduciary duty to him. By providing evidence that the purchasers knew about the lawsuit between Cohen and Dilick, Cohen argues that he has raised a genuine issue of fact on whether there was an agreement between Dilick and the purchasers on a course of action and a meeting of the mind on that course of action.

In contrast, the purchasers contend that, while Dilick may have committed an "overt act," i.e., breached his fiduciary duty to Cohen, Cohen presented no evidence of a "meeting of the minds" between Dilick and the purchasers. Specifically, the purchasers argue that mere knowledge of the lawsuit and the dispute between Dilick and Cohen is no evidence of a conspiracy. In support of its

position, the purchasers rely on *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854 (1968).

In *Schlumberger*, Nortex purchased several mineral interests in wells that were later determined to be illegally bottomed beyond their lease lines, and, as a result, the loss of production from those wells made their leasehold interests worth far less than what it had paid for them. 435 S.W.2d at 855. Schlumberger, a well servicing company, logged and perforated four of Nortex's illegally bottomed wells, knew that the wells were deeper than an amount necessary to reach the oil-producing sands, and took steps to protect its customers from any investigation about the illegally bottomed wells. *Id.* at 856. Nortex sued Schlumberger, contending that it had conspired with the lease owners and drillers to deviate the four wells and bottom them under adjoining or adjacent leases. *Id.* The Texas Supreme Court held that, while Schlumberger may have had the information to discover the conspiracy between the lease owners and the drillers to drill the deviated wells, there was no evidence that it had agreed to its customers' plans to wrongfully drill, produce, and convert the oil of others. *Id.* at 857. In so holding, the court noted that there was no evidence that Schlumberger shared in its customer's ill-gotten gains, and that the "uncontroverted evidence is that Schlumberger was performing a service for which it was paid on a professional basis at its regular and customary rate." *Id.* at 857–58.

19

*Analysis*

We agree with the purchasers' argument that knowledge of the lawsuit between Cohen and Dilick is no evidence that there was any "meeting of the mind" between the purchasers and Dilick regarding Dilick's intention to breach his fiduciary duty to Cohen. As in *Schlumberger*, while the purchasers may have been aware that someone else had committed or might commit a tort, there is no evidence that they participated in it. In *Schlumberger*, the alleged conspirator was a service company that worked on, and probably was aware of, the tortiously drilled wells, but its only involvement was to receive payment at its regular and customary rate for servicing the wells. *Id.* Similarly, in this case, while the purchasers may have known about Dilick's breach of fiduciary duty to Cohen via the lawsuit, their only involvement was to pay fair market value for the properties.

In this case, the underlying tort of breach of fiduciary duty was that Dilick sold the properties to pay off his own personal loan. However, there is simply no evidence that the purchasers had any knowledge about what Dilick intended to do with the proceeds once he sold the properties. In a civil conspiracy case, "the parties must be aware of the harm or wrong at the inception of the combination or agreement," or there is no meeting of the minds. *See Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995). "One 'cannot agree, either expressly or tacitly, to the commission of a wrong which he knows not of.'" *Id.* (quoting

*Schlumberger*, 435 S.W.2d at 857). Absent evidence that the purchasers knew that Dilick intended to misappropriate the proceeds of the sale for his own personal use, they cannot have, as a matter of law, intended to facilitate that wrong.

Because Cohen failed to present evidence raising a genuine issue of material fact as to the "meeting-of-the-mind" element of his conspiracy claim, the trial court properly granted the purchasers' no-evidence summary judgment on this claim. Because Cohen failed to overcome his no-evidence burden on his conspiracy claim, we need not address the traditional motion to the extent it addresses the same claim. *Lightning Oil*, 520 S.W.3d at 45.

## *Texas Fraudulent Transfer Act Claim*

In two sub-issues, Cohen contends that the trial court erred in granting the purchasers' no-evidence and traditional motions for summary judgment on his claim under TUFTA.

### *Applicable Law*

TUFTA is "designed to protect creditors from being defrauded or left without recourse due to the actions of unscrupulous debtors." *Janvey v. GMAG, LLC*, 592 S.W.3d 125, 126 (Tex. 2019). Creditors may invoke TUFTA to "claw back" fraudulent transfers from their debtors to third-party transferees. *Id.* The purpose of TUFTA is to prevent debtors from prejudicing creditors by improperly moving assets beyond their reach. *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560,

566 (Tex. 2016); *Wohlstein v. Aliezer*, 321 S.W.3d 765, 776 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

TUFTA permits a creditor, under certain circumstances, to set aside a debtor's fraudulent transfer of assets. *See* TEX. BUS. & COM. CODE § 24.008; *Goebel v. Brandley*, 174 S.W.3d 359, 362 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation":

> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
> > (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> >
> > (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

TEX. BUS. & COM. CODE § 24.005(a). Under TUFTA, a "debtor" is "a person who is liable on a claim." *Id.* § 24.002(6). A "creditor" is "a person . . . who has a claim." *Id.* § 24.002(4). A "person" includes an "individual, partnership, corporation, association, organization, government or governmental subdivision or

22

agency, business trust, estate, trust, or any other legal or commercial entity." *Id.* § 24.002(9). A "claim" is a "right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id.* § 24.002(3). "Reasonably equivalent value" is defined as including a transfer that is within the range of values for which the transferor would have sold the asset in an arm's length transaction. *Id.* § 24.004. A "transfer" includes "every mode . . . of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." *Id.* § 24.002(12).

Facts and circumstances that may be considered in determining fraudulent intent include a non-exclusive list of "badges of fraud" prescribed by the legislature in section 24.005(b). Such "badges of fraud" include that:

(1)    the transfer or obligation was to an insider;

(2)    the debtor retained possession or control of the property transferred after the transfer;

(3)    the transfer or obligation was concealed;

(4)    before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5)    the transfer was of substantially all the debtor's assets;

(6)    the debtor absconded;

23

(7)    the debtor removed or concealed assets;

(8)    the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9)    the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10)    the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11)    the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

TEX. BUS. & COM CODE § 24.005(b). The presence of several of these factors is sufficient to support a fact finder's reasonable inference of fraudulent intent. *Qui Phuoc Ho v. MacArthur Ranch*, LLC, 395 S.W.3d 325, 329 (Tex. App.—Dallas 2013, no pet.).

*Propriety of Traditional Motion for Summary Judgment*

In his Fourteenth Amended Petition, Cohen alleged that Flat Stone II, acting through Dilick, fraudulently transferred title to the Bissonnet properties, first to two entities controlled by Dilick, and then to the purchasers. In so pleading, he contended that he [and the trusts he controlled] were "creditors' with a "claim" against the "debtor," Dilick [and the entities he controlled], and that Dilick fraudulently transferred the Bissonnet Properties to the purchasers in violation of TUFTA.

24

In their traditional motion for summary judgment,[6] the purchasers contended that Cohen is not a creditor under TUFTA, thus, he has no standing to assert a TUFTA claim against them. Specifically, the purchasers claimed that Cohen did not qualify as a creditor under TUFTA because the "claim" against Dilick upon which the TUFTA cause of action was based had been extinguished by a settlement and dismissal with prejudice. In support of this position, the purchasers attached a copy of an agreed Final Judgment filed in the United States District Court for the South District of Texas[7] requesting that "Cohen's claims, including

---

[6] Generally, when a party seeks both a traditional and no-evidence summary judgment, we first review the trial court's no-evidence summary judgment. *See Ridgway*, 135 S.W.3d at 600. If the nonmovant fails to produce more than a scintilla of evidence raising a genuine fact issue on the challenged elements of his claim, there is no need to analyze whether the movant's summary judgment evidence satisfied the traditional summary judgment burden of proof. *Id.* However, this rule cannot be applied unless the same issue was raised in both motions. *Dunn v. Clairmont Tyler, LP*, 271 S.W.3d 867, 869—70 (Tex. App.—Tyler 2008, no pet.). In this case, the purchasers' standing argument under TUFTA was raised only in their traditional motion for summary judgment. Because this issue is dispositive, we address the traditional motion for summary judgment first. *See id.* (addressing traditional summary judgment first because it raised dispositive limitations issue), *see also Hixon v. Tyco Inter., Ltd.*, No. 01-04-01109-CV, 2006 WL 3095326, *10 (Tex. App.—Houston [1st Dist.] Oct. 31, 2007, no pet.) (mem. op.) ("Because we conclude that the trial court properly rendered judgment in favor of [movants] on traditional, rule 166a(c) grounds, we need not address whether the trial court properly rendered summary judgment in favor of [movants] on no-evidence grounds").

[7] We note that the Cohen's lawsuit originally included claims against Dilick and the Dilick-controlled entities. However, this case, which was severed from the main case, involves only Cohen's claims against the purchasers. Cohen's remaining claims against Dilick and his related entities were removed to bankruptcy court and docketed as *Flat Stone, Ltd. v. Cohen*, No. 4:16-cv-00283, before the Hon. Alfred H. Bennett of the United States District Court, Southern District of Texas,

25

any derivative claims, against the Partnerships, Dilick, the General Partners, and the Other Cross-Defendants [be] dismissed with prejudice[.]"

Although the purchasers cite no Texas case specifically addressing the issue—whether a TUFTA claim against a purchaser is extinguished by settlement and dismissal with prejudice of the underlying claim against the debtor—they rely on a case from North Dakota, *Jahner v. Jacob*, 515 N.W.2d 183 (N.D. 1994).[8]

In *Jahner*, Frances Jahner (the creditor) obtained a personal injury judgment against Valentine Jacob (the debtor). 515 N.W.2d at 184. Thereafter, Jacob transferred a portion of his property ($9,500) to his son, Kasper Jacob. *Id.* Frances sued Kasper, but her initial suit against him was dismissed because the trial court did not have personal jurisdiction over Kasper. *Id.* Frances then sued Kasper in his home state, but the trial court granted summary judgment in Kasper's favor because the underlying judgment against Valentine, upon which Frances' fraudulent transfer act was based, had expired. *Id.* The Supreme Court of North Dakota held that the trial court properly granted summary judgment in Kasper's

---

Houston Division. The parties do not dispute that Cohen's claims against Dilick in the removed bankruptcy case have been settled and dismissed with prejudice.

8      TUFTA provides that "this chapter shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it." *See* Tex. Bus. & Com. Code § 24.012. Thus, consideration of other states' fraudulent transfer law is appropriate. *See Nathan v. Whittington*, 408 S.W.3d 870, 873 (Tex. 2013); *Bowman v. El Paso CGP Co.*, 431 S.W.3d 781, 786 n.6 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

favor, holding that "the lack of a presently enforceable debt against Valentine is fatal to Frances's action against Kasper to set aside a fraudulent transfer." *Id.* In so holding, the court stated that "[a] valid, presently enforceable debt against the original transferor is an essential element of an action against the transferee to set aside a fraudulent transfer." *Id.* at 185. In so holding, the court noted that the fraudulent claims act "does not create new claims"[9] and that "even if the claimant was a 'creditor' when the fraudulent transfer occurred, the claimant loses her status as a creditor when her claim against the transferor becomes barred by the statute of limitations, a non-claim statute, or other method."[10] The court concluded that, because "a valid, legally enforceable debt is an essential element of an action to set aside a fraudulent transfer," and "the judgment against [the debtor] is no longer enforceable, [the creditor] cannot set aside the transfer to [the transferee." *Id.* As such, the creditor's claim against the transferee was properly dismissed. *Id.*

Indeed, numerous jurisdictions have held that when the creditor's substantive rights against the debtor have been *extinguished*, whether by statute of

---

[9]     *Id.* (*citing Jorden v. Ball*, 357 Mass. 468, 258 N.E.2d 736, 737 (1970)).

[10]    *Id.* (*citing Laidley v. Heigho*, 326 F.2d 592, 594 (9th Cir. 1963); *State of Rio De Janeiro v. E.H. Rollins & Sons, Inc.*, 299 N.Y. 363, 87 N.E.2d 299, 300 (1949); *Kirschner v. Cohn*, 185 Misc. 526, 56 N.Y.S.2d 887, 888 (Sup. Ct. 1945); *Remington–Rand, Inc. v. Emory University*, 196 S.E. 58, 59 (1938)).

limitation or expiration of judgment,[11] state laws concerning exempt property,[12] or otherwise,[13] the creditor has no right to proceed against the transferee.

However, Cohen, relying on *Hoffman v. Americahomekey, Inc.*, No. 3:12-CV-3806-B, 2015 WL 12698389 (W.D. Tex. Jul. 7, 2015), argues that a settlement between the debtor and the creditor does not extinguish a TUFTA claim against a transferee. *Hoffman*, however, is distinguishable. In *Hoffman*, the creditor settled its claim against the debtor, and the claim was reduced to a consent judgment holding the debtor liable to the creditor in the amount of $580,000, which the debtor still owed. *Id.* at *2. The transferee sought to dismiss the TUFTA claim

---

[11] *See, e.g.*, *Jahner*, 515 N.W.2d at 185; *Hullett v. Cousin*, 63 P.3d 1029, 1034 (Ariz. 2003).

[12] *See, e.g.*, *In re Kimmel*, 131 B.R. 223, 229 (Bankr. S.D. Fla. 1991).

[13] *See, e.g.*, *Akanthos Capital Mgmt. v. CompuCredit Hldgs. Corp.*, 677 F.3d 1287 (11th Cir. 2012) (noting that contractual "no-action clause" bars creditors from bringing fraudulent conveyance action); *RRR, Inc. v. Toggas*, 98 F. Supp. 3d 12, 22 (D.D.C. 2015) (holding that when judgment has been "extinguished" because of 10-year delay, it is no longer valid debt and cannot serve as substantive basis for fraudulent transfer action); *John Deere Shared Servs., Inc. v. Success Apparel LLC*, 2015 WL 6656932, at *4 (S.D.N.Y. Oct. 30, 2015) (holding that creditor's status was effectively extinguished because it was undisputed creditor was subordinate to secured creditors and debtor's assets could not satisfy secured creditors' interests); *Fid. Nat'l Title Ins. Co. v. Schroeder*, 179 Cal. App. 4th 834, 845 (2009) (holding same); *Kraft Power Corp. v. Merrill*, 981 N.E.2d 671, 681–82 (Mass. 2013) (holding that when contractual cause of action was not extinguished by death of party, it could serve as substantive predicate for fraudulent transfer action); *Terry v. Belfort*, 70 A.D.3d 1028 (N.Y. App. Div. 2010) (holding that fraudulent transfer action was barred by court order as part of settlement); *Carr v. Guerard*, 616 S.E.2d 429, 430 (S.C. 2005) (holding that expired judgment cannot support fraudulent transfer action).

.

28

against it, arguing that the settlement extinguished the creditor's "claim" under TUFTA. *Id.* at *1.  The court disagreed, holding that the creditor's claim against the debtor was not extinguished, but was converted to a judgment, which still gave the creditor a "right to recover" from the debtor.  *Id.* at *2.  Because the "claim" was not extinguished, but merely reduced to a recoverable judgment, the TUFTA claim against the transferee was permissible.  *Id.*

The obvious difference in this case is that, while the settlement between Cohen and Dilick was reduced to a judgment, the judgment was not *against* Dilick and did not hold him liable to Cohen. Instead, the settlement between Cohen and Dilick resulted in a judgment in which Cohen's claims against Dilick were dismissed with prejudice. The issue, thus, is whether the judgment that was entered between Cohen and Dilick in the federal court extinguished Cohen's claim against Dilick.  We believe that it does.

A dismissal with prejudice is a final adjudication of the parties' rights. *See Mossler v. Shields*, 818 S.W.2d 752, 753 (Tex. 1991). A dismissal without prejudice is not. *See Crofts v. Court of Civil Appeals for Eighth Supreme Judicial Dist.*, 362 S.W.2d 101, 104 (Tex. 1962). That is, a dismissal with prejudice operates as res judicata to bar the dismissed claims. *See, e.g.*, *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 865–66 (Tex. 2010). Likewise, an accord and satisfaction completely bars recovery on claims arising out of the settled matter.

*See Stewart Title Guar. Co. v. Aiello*, 941 S.W.2d 68, 73 (Tex. 1997). Thus, unlike *Hoffman*, the settlement in this case, which culminated in a dismissal with prejudice, extinguished Cohen's claims against Dilick which led to the alleged fraudulent transfer.

Other cases cited by Cohen are also inapposite. In *Global State Investment USA, Inc., v. LAS Properties, LLC*, No. 2:14-CV-4494-DCN, 2015 WL 1943370 (D.S.C. Apr. 29, 2015), the settlement in the case did not involve an issue of whether the creditors (LAS and PRLtd) had extinguished their TUFTA claims against the debtors (Golden State and Capital) because LAS and PRLtd were not parties to the lawsuit giving rise to the settlement. *Id.* at *1–2. Indeed, the settlement itself effectuated the fraudulent transfer of property in which the creditors claimed an interest. *See id.* at *4. And, although Cohen cites *Markward v. Murrah*, 138 Tex. 34, 37, 156 S.W.2d 971, 973 (1941) for the proposition that "Texas courts will not terminate a fraudulent transfer claim because the claim against the underlying debtor was extinguished by limitations," the case does not so hold. Indeed, the court held that, while the creditors may have been time-barred in probate court, they were not time-barred in district court, and that district court was the proper court in which to assert a claim for fraudulent transfer. *Id.* at 39-40. Unlike the present case, there was no issue in *Markward* of whether the creditor's claim against the debtor had been extinguished; the court held that it was not. *Id.*

30

If the purpose of TUFTA is to prevent debtors from prejudicing creditors by improperly moving assets beyond their reach, *see Golf Channel*, 487 S.W.3d at 566, the purpose of the statute has been met if the creditor and debtor settle the dispute and the creditor dismisses, with prejudice, the claim that the fraudulent transfer was to avoid paying. Cohen cites no cases to support his assertion that he is entitled to **both** a claim against Dilick representing the value of the properties fraudulently transferred **and** the actual properties that Dilick transferred to the purchasers. Thus, we reject Cohen's claim that "[s]ettlement with Dilick for money does not extinguish Cohen's right to seek a return of the Bissonnet Properties."

Because the purchasers conclusively negated an essential element of Cohen's TUFTA claim, i.e., that Cohen was a "creditor" with a "claim," the trial court properly granted the purchasers' traditional summary judgments on Cohen's TUFTA claim. *See Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010) ("A defendant who conclusively negates at least one of the essential elements of a cause of action . . . is entitled to summary judgment.").

### Ultra Vires

In his final sub-issue on appeal, Cohen contends that the trial court erred in granting the purchasers' Motions for Traditional Summary Judgment on the claim in his Fourteenth Amended Petition seeking to impose a constructive trust or to rescind the sales of the properties because of Dilick's ultra vires acts.

31

Citing *Campbell v. Walker*, No. 14-96-01425-CV, 2000 WL 19143 (Tex. App.—Houston [14th Dist.] Jan. 13, 2000, no pet.) (mem. op., not designated for publication), Cohen argues that "[a]n ultra vires action is an act that is beyond the scope of the powers of the corporation as defined by its charter or the laws of the state of incorporation." Cohen further contends that Dilick acted ultra vires because "[t]he Limited Partnership Agreements do not permit the general partner to use Limited Partnership assets as collateral for an individual loan to be used for non-partnership business."

In their Motion for Traditional Summary Judgment, and again on appeal, the purchasers contend that the "ultra-vires doctrine is not applicable to limited partnerships under Texas law." We agree. The case relied upon by Cohen, *Campbell v. Walker*, specifically refers to "the powers of the corporation[.]" *Id.* at *11. The Texas Business Organizations Code specifically provides a cause of action for certain ultra vires acts by corporations. *See* TEX. BUS. ORGS. CODE § 20.002. No such cause of action exists for partnerships. *See* TEX. BUS. ORGS. CODE §§ 151.001-154.204.

Because the purchasers conclusively negated an element of Cohen's ultra vires claim, i.e., an act beyond the scope of powers of a *corporation*, the trial court properly granted traditional summary judgment on this claim.

## CONCLUSION

Cohen's Fourteenth Amended Petition raised four claims: (1) aiding and abetting Dilick in his breach of fiduciary duties, (2) conspiring with Dilick to breach his fiduciary duties, (3) receiving property fraudulently transferred by Dilick in violation of the TUFTA, and (4) seeking recission of the sales based on the ultra vires actions of Dilick. Because the trial court properly granted the purchasers' no-evidence motions for summary judgment on two claims (aiding and abetting & civil conspiracy) and traditional motions for summary judgment on two claims (TUFTA & Ultra Vires), we affirm the trial court's final judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Hightower and Adams.